UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMIE GITTEMEIER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 4:24-cv-01236-JAR |
| v. ) | |
| ) | |
| LIBERTY MUTUAL PERSONAL ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**AND**
**PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

COMES NOW Plaintiff, through counsel, and for her Memorandum in Opposition to the Motion for Summary Judgment filed by Defendant Liberty Mutual Personal Insurance Company ("Liberty Mutual"), pursuant to Federal Rule of Civil Procedure 56(c), as well as her Memorandum in Support of her Cross-Motion for Partial Summary Judgment, states as follows:

**Introduction**

Defendant Liberty Mutual's Motion for Summary Judgment must be denied because Defendant fails to establish that Plaintiff refused to cooperate in any material way. Second, Defendant also fails to show that its request for an Examination Under Oath ("EUO") was reasonable or that it suffered any prejudice from the lack of an EUO when it had already rejected Plaintiff's demand for Underinsured Motorist (UIM) coverage months prior. Third, a genuine question exists as to whether Defendant's conduct in proceeding with the EUO despite knowing that suit had been filed served to waive its affirmative defense of non-cooperation.

Furthermore, Plaintiff is entitled to partial summary judgment as to a finding that defendant acted vexatiously and unreasonably in making such a low settlement counter-offer of $8,500 on January 9, 2024, before the issue of the EUO was ever raised.

## Summary Judgment Standard

In considering a motion for summary judgment, the court must view "the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences drawn from the record." *Farkas v. Addition Mfg. Techs., LLC*, 952 F.3d 944, 946 (8th Cir. 2020) (internal quotation omitted). For summary judgment to be appropriate, the movant must show "'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). "An issue is 'genuine' if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party." *Schilf v. Eli Lilly & Co.*, 687 F.3d 947, 948 (8th Cir. 2012). "As to materiality, the substantive law will identify which facts are material." *Id.* at 949 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). At the summary judgment stage, the district court's duty is only to determine whether or not there is a genuine issue for trial; the court "must not weigh evidence or make credibility determinations." *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

## The "Cooperation Clause" in Liberty Mutual's Policy

For the convenience of the Court, below is the full text of the policy's provisions relating to the duties of an insured after an accident or loss occurs (hereinafter, the "Cooperation Clause"). Plaintiff has added bolding to the portions of the Cooperation Clause that were added by Liberty Mutual's Automobile Amendatory Endorsement. The un-bolded portions appear in both the original and amended text of the Cooperation Clause.

  B. A person seeking any coverage must:

2

1. Cooperate with us in the investigation, settlement or defense of any claim or suit. **This includes, but is not limited to, allowing us to inspect damage to a vehicle covered by this policy.**

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, as often as we reasonably require **within 30 days of our request**:
   a. To physical **and mental exams** by physicians we select **under terms we require**. We will pay for these exams.
   b. **To interviews and recorded statements without the need for us to conduct an examination under oath**.
   c. To examination under oath and subscribe the same.

4. Authorize us to obtain, **within 30 days of our request**:
   a. Medical reports; and
   b. Other pertinent records, **including but not limited to, information contained in or transmitted by any device located in or on the motor vehicle**.

5. Submit a proof of loss when required by us **within 30 days of our request**.

## Argument

**I.  Summary judgment must be denied because Defendant fails to prove a material breach of the Cooperation Clause.**

None of Defendant's cited cases involve a failure to appear at an EUO while counsel was trying to negotiate about the terms of the EUO itself. Further, in all of the cases cited by Defendant in its Motion (Doc. # 17) and Memorandum (Doc. # 19), the insured withheld documents **and** refused to submit to an EUO.[1, 2] Thus, Defendant fails to provide the Court with any caselaw to

---

[1] In its motion and memorandum, Defendant cites to "*Younker v. Farmers Ins. Co.*, 707 S.W.2d 465, 466 (Mo. Ct. App. 1986)." Plaintiff cannot locate any such case in Westlaw or online.

[2] Defendant's cited case of "*Goodman v. Allstate*, 293 S.W.3d 743, 751-52 (Mo. Ct. App. 2009)" also does not exist. Rather, the *Goodman* case that Defendant attached as an exhibit to its SOFs is *Goodman v. Allstate Fire & Casualty Insurance Company*, Case No. 22-00383-CV-W-GAF, 2023 WL 5667909 (W.D. Mo. July

support the proposition that Plaintiff's actions in this matter constitutes a breach of the Cooperation Clause, let alone a material breach.

To the contrary, Plaintiff's counsel was clear throughout the pre-suit process that Plaintiff was not refusing to cooperate, or even refusing to submit to an EUO. Plt's Resp. to Defendant's Statement of Facts (hereinafter, "SOFs"), at #4. Liberty Mutual did not make reasonable attempts to secure Plaintiff's cooperation. Refusing every suggestion at obtaining the same information in ways less burden on the Plaintiff, and instead insisting on the *most burdensome* methods, is not reasonable.

Paragraph B.3.b. of the Cooperation Clause allows for Plaintiff to submit "[t]o interviews and recorded statements without the need for us [Liberty Mutual] to conduct an examination under oath." Plt's Resp. to SOF #1. This difference between the original and amended versions of the Cooperation Clause illustrates that Defendant itself recognizes the burden of EUOs, and thus created an intermediate option of taking "interviews and recorded statements without the need for us to conduct an examination under oath." Plt's Resp. to SOF #1. It makes little sense for Defendant to claim that an insured is somehow refusing to cooperate when said insured is explicitly offering to submit to exactly the sort of recorded statement that the policy contemplates." Plt's Resp. to SOF #4 (noting the burden of the EUO and Plaintiff's offer to give "an interview and/or recorded statement"). If the EUO was always the only tool through which Liberty Mutual could complete its investigation, there would be no reason to amend the policy as Liberty Mutual did.

Defendant does not explain why conducting the EUO via Zoom, or taking a recorded statement—a method expressly identified by the Cooperation Clause as an acceptable means of

---

26, 2023), which is from the United States District Court, Western District of Missouri, not a decision by the Missouri Court of Appeals. See Def's Mot. for Summ. J.  Def's Exhibit J, p.1 (Doc. # 17-11).

4

investigating a claim—would have been unacceptable or in any way insufficient in this matter. However, as will be explained in the subsequent section, Plaintiff believes the reason for Defendant's recalcitrance is that Liberty Mutual wanted to make this process as difficult for Plaintiff as possible in order to bring about a "breach."

Moreover, nowhere in the Cooperation Clause, or anywhere else in the policy, does Liberty Mutual obligate Plaintiff to "provide requested documents necessary for the investigation." Plt's Resp. to SOF #10. Rather, paragraph B.4. requires simply that, if Liberty Mutual requests authorization to obtain for itself "medical reports[,] and other pertinent records including but not limited to, information contained in or transmitted by any device located in or on the motor vehicle[,]" then Plaintiff must grant such authorization. Plt's Resp. to SOF #10. Defendant never requested authorization to obtain the "[m]edical records regarding prior and post-accident treatment", "[p]hotographs of injuries and property damage", or "[s]ocial media posts related to the claim"; instead, it demanded that Plaintiff produce those documents directly. See Def's SOF #10. Plaintiff cannot be held to have materially breached the Cooperation Clause in regard to Liberty Mutual instructing her to obtain and produce documents because the policy does not give Liberty Mutual the right to make such a demand.

Furthermore, despite what Liberty Mutual claims, Plaintiff did gratuitously produce her medical and billing records for the injuries she sustained in the crash. Plt's Resps. to SOFs #11, 12. Even if Defendant were permitted by the Cooperation Clause to demand the production of documents, it would not be fair or reasonable to fault Plaintiff for not **re-producing** documents she had long ago sent to Liberty Mutual – documents which Liberty Mutual confirmed receiving. Plt's Resp. to SOF #11. Because Defendant fails to point to any evidence that it requested authorization to obtain the documents described in its SOF #10, Defendant necessarily cannot

5

show that Plaintiff failed to comply with the request. Accordingly, Defendant fails to establish that Plaintiff breached any contractual duty regarding the production of documents.

In sum, Defendant wrote the insurance policy that defines what it can require Plaintiff to do, then it tried to expand its power beyond what the language of the policy permits, and now Libert Mutual claims that Plaintiff's non-compliance with these newly-invented powers proves a material breach occurred. If anything, it is Defendant that breached the Cooperation Clause by demanding things of Plaintiff that it had no justification for, and insisting on utilizing the most burdensome methods it could when Plaintiff, its insured—with whom it is supposed to deal in good faith—was literally offering on record to answer any questions Defendant might have if only Defendant would agree to small concessions like holding the EUO via Zoom, or taking a recorded statement instead. Plt's Resp. to SOF #13.

**II.     Summary judgment must be denied because Defendant was not prejudiced.**

As explained above, the so-called failure to produce documents cannot constitute a breach of the Cooperation Clause in the present matter. Thus, the only possible basis for Defendant to claim breach, and the only conduct which could theoretically cause prejudice to Liberty Mutual, is that Plaintiff did not give an EUO prior to filing suit. However, under the circumstances of this case, Defendant cannot credibly assert that its ability to investigate the claim was hindered by the lack of an EUO. That is because, long before it ever asked to take the EUO of Plaintiff, Liberty Mutual had reached a decision on Plaintiff's claim for UIM coverage. Plt's Resp. to SOF #14. Namely, on January 9, 2024, Liberty Mutual's adjuster, Kevin Miller, sent an email to Plaintiff's counsel wherein Mr. Miller summarized Liberty Mutual's view that the collision was "a minor rear end accident", casting doubt on the cause and extent of Plaintiff's injuries, and offering $8,500 to "resolve Jamie's UIM claim." Plt's Resp. to SOF #14 (email from Liberty Mutual Adjuster). The

6

adjuster's email does not mention any need for a recorded statement, an EUO, additional authorizations for release of records, or that it believed there was any information it was missing. Liberty Mutual clearly felt that it was fully capable of evaluating Plaintiff's UIM claim based on the information it possessed as of January 9, 2024.

The non-appearance was not prejudicial because the EUO was neither relevant nor necessary to Liberty Mutual's investigation in that Defendant had already made a determination on the UIM claim. Indeed, when Defendant suddenly began insisting that an EUO was necessary, nothing about the collision or Plaintiff's injuries changed since the January 9, 2024, rejection/counter-offer to Plaintiff's UIM demand. Plt's Resp. to SOF #14. Therefore, the purported failure to cooperate by not giving an EUO prior to filing suit is irrelevant to showing prejudice because Liberty Mutual had already demonstrated that it could evaluate Plaintiff's claim without the need for an EUO.  For that matter, if the EUO was actually as important as Defendant now claims, it would mean that the valuation of the UIM claim without an EUO was malpractice.

It is contradictory for Defendant to claim that it did not need the EUO to fairly evaluate Plaintiff's UIM claim in January of 2024, only to turn around and insist a few months later that an EUO is the only way it can complete its investigation. Only one of the two can be true. *See* Plt's Statement of Additional Material Facts #6-7.

**III.    Summary judgment must be denied because Defendant waived its defense of breach of the Cooperation Clause.**

A genuine dispute exists as to whether Liberty Mutual waived its defense that a material breach of the Cooperation Clause had occurred when Defendant elected to take the EUO on August 7, 2024, ***after*** having been informed that Plaintiff had already filed suit. Plt's Resp. to SOF #7. This is because, according to Defendant, the breach became material the moment Plaintiff filed suit while the EUO was still pending. However, the trial court in *Fuller v. Farmers Ins. Co., Inc.*,

7

Case No.: 19-CV-00327-FJG, 2020 WL 6322854, at *6 (W.D. Mo. Sept. 29, 2020), addressed a substantially similar situation and ruled that the insurer's motion for summary judgment had to be denied because various factual disputes existed.

In *Fuller*, the plaintiff sent a UIM demand letter on December 28, 2018. *Id.* at *2. After providing additional records upon request of the insurer, Farmers—including a life care plan estimating the future costs of plaintiff's medical care—Farmers sent a letter on March 22, 2019, requesting an EUO. *Id.* at *3. Next, on March 29, 2019, plaintiff sought leave to amend her complaint in the suit against tortfeasor to name Farmers as an additional party. *Id.* at *4. The court granted that motion on April 23 and Farmers filed its Answer on May 17, wherein it raised non-cooperation as an affirmative defense. *Id.* Then, on June 25, Farmers took plaintiff's EUO. *Id.*

Eventually, Farmers filed a motion for summary judgment, arguing that "plaintiff breached her duty to cooperate by 1) refusing to submit to an examination under oath; 2) failing to produce all relevant medical, educational and employment records, bills and/or authorizations and 3) initiating and continuing to prosecute the lawsuit." *Id*. Farmed asserted that these acts of non-cooperation had caused Farmers "substantial prejudice despite its reasonable diligence in attempting to secure plaintiff's cooperation." *Id*. Indeed, much like Liberty Mutual alleges in the present case, Farmers argued:

> that plaintiff filed suit against them almost immediately after Farmers requested her examination under oath and additional medical records. Farmers states that it was required to exercise only "reasonable diligence" in seeking plaintiff's cooperation and it did so by requesting information from plaintiff on three different occasions: August 9, 2018, January 25, 2019 and March 22, 2019.

*Id.* at *5.

The court denied Farmer's motion, instead agreeing with plaintiff's arguments that (1) taking plaintiff's EUO after the purported breach—i.e., after plaintiff had already named Farmers

8

in the suit—created a question of fact as to whether Farmers waived its right to deny coverage on the basis of non-cooperation; and (2) the 84 days between the December 2018 UIM demand letter and Farmers' March 2019 request for an EUO undercut Farmer's claim that it had exercised reasonable diligence in securing the EUO. *Id.* at \*5-6. Thus, the court in *Fuller* found summary judgment would be improper upon its holding that there were disputed materials facts "regarding whether [plaintiff] materially breached the cooperation clause, whether Farmers suffered any prejudice as a result of the breach and whether Farmers acted diligently in securing plaintiff's cooperation." *Id.* at \*6.

In the present matter, Liberty Mutual took the non-appearance EUO on August 7, 2024, even though the state court petition was filed on August 6 and Plaintiff's counsel had informed Defendant's counsel of the lawsuit's filing before the day of the EUO. Plt's Resp. to SOF #7. Defendant's counsel nonetheless chose to proceed with the EUO despite knowing that the so-called "material breach" had already occurred. In so doing, Defendant implicitly communicated that the breach was not actually material – because, if it had been a material breach of the Cooperation Clause, there would no longer be a need for the EUO; Liberty Mutual could have simply denied coverage the moment suit was filed against it.

Additionally, like in *Fuller*, Liberty Mutual's claim that it exercised due diligence to secure the EUO is belied by the fact that Defendant waited months to make its first request for an EUO. Compounding matters is that, unlike in *Fuller*, the insurer here had already rejected Plaintiff's UIM demand before requesting an EUO. Thus, the argument that the EUO was necessary to the insurer's investigation could only carry less weight here than it did in *Fuller* (where Farmers was named in the suit even though Farmers' counsel had "formally requested a 90 day extension of the

9

settlement demand to allow 'Farmers to complete the examination under oath and have the documentation you have provided reviewed'"). *Id.* at *3.

Here, Liberty Mutual clearly did not feel it needed the EUO before it could respond to Plaintiff's UIM demand, and thus, the lack of an EUO could not have prejudiced Defendant's ability to investigate her claim in any material way. Plt's Resp. to SOF #14. Furthermore, in proceeding with the EUO despite after the alleged non-cooperation and breach by Plaintiff, Defendant reinforced just how immaterial the EUO truly was to its investigation.

### IV.    PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT.

Finally, Plaintiff is entitled to summary judgment that Defendant acted vexatiously and unreasonably in making such a low settlement counter-offer of $8,500 on January 9, 2024, before the issue of the EUO was ever raised. *See* Plt's Statement of Additional Material Fact #2. Specifically, Liberty Mutual asserted that $8,500 was the appropriate valuation of Plaintiff's damages despite medical records showing **far more** than that in medical expenses already incurred, never mind the projected future cost for the surgery Plaintiff's treating physician advised was needed, or the more than $17,000 dollars in lost wages Plaintiff incurred. *See* Plt's Statement of Additional Material Fact #1 (damages outlined in UIM demand letter). Missouri state and federal courts have ruled that "lowball" offers by an insurer can, on their own, constitute sufficient evidence of vexatiousness for submission to a jury on the issue of vexatious refusal to settle. *See* attached Orders: (1) by the Honorable Joan L. Moriarty, in *Stephenson v. MetLife Auto & Home Insurance Co.*, Cause No. 1022-CC01569 (Mo. Trial Ct. 22nd Jud. Cir., City of St. Louis, June 15, 2011); and (2) by the Honorable John A. Ross, in *Dozier v. USAA Casualty Insurance*, Case No. 4:17-cv-02889-JAR (E.D. Mo. June 20, 2019).

**Conclusion**

Defendants' Motion for Summary Judgment must be denied. Viewing the facts in the light most favorable to Plaintiff, as the nonmoving party, and giving Plaintiff the benefit of all reasonable inferences drawn from the record, *Farkas v. Addition Mfg. Techs., LLC*, 952 F.3d 944, 946 (8th Cir. 2020), summary judgment would be improper here because (1) Defendant fails to establish that Plaintiff refused to cooperate in any material way; (2) Defendant fails to show how it could be prejudiced by the lack of an EUO it did not care to take until after rejecting Plaintiff's UIM demand; and (3) a genuine question exists as to whether Defendant's conduct served to waive its affirmative defense of non-cooperation.

Accordingly, just as the court in *Fuller v. Farmers Insurance* concluded that summary judgment was unwarranted, this court should hold that there are disputed materials facts regarding whether Plaintiff materially breached the cooperation clause, whether Liberty Mutual suffered any prejudice as a result of the breach and whether Liberty Mutual acted diligently in securing Plaintiff's cooperation under the circumstances of this case.

Finally, Plaintiff's Motion for Partial Summary Judgment should be granted, and the Court should find as a matter of law that Defendant acted vexatiously and unreasonably in its handling and "lowball" offer on Plaintiff's UIM claim.

WHEREFORE, Plaintiff respectfully requests this Court deny Defendant's Motion for Summary Judgment, grant Plaintiff's Motion for Partial Summary Judgment, and for such other relief as this Court deems just and proper.