UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JAMIE GITTEMEIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:24CV1236 JAR |
| | ) | |
| LIBERTY MUTUAL PERSONAL | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Liberty Mutual Personal Insurance Company's second motion for summary judgment [ECF No. 47] and on Plaintiff Jamie Gittemeier's motion for sanctions against Liberty Mutual [ECF No. 54].

**I.     Background and Facts**

Defendant Liberty Mutual Personal Insurance Company issued a policy (the "Policy") of insurance to Plaintiff Jamie Gittemeier which included underinsured motorist coverage ("UIM") limits of $250,000.00 per person. [ECF No. 5 at 2].

The Policy includes a so-called cooperation clause, which provides in part:

> B. A person seeking any coverage must:
> 1. Cooperate with us in the investigation, settlement or defense of any claim or suit. This includes, but is not limited to, allowing us to inspect damage to a vehicle covered by this policy.
> 2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.
> 3. Submit, as often as we reasonably require within 30 days of our request:
>    a. To physical and mental exams by physicians we select. We will pay for these exams.
>    b. To interviews and recorded statements without the need for us to conduct an examination under oath.
>    c. To examination under oath and subscribe the same.
> 4. Authorize us to obtain, within 30 days of our request:

1

> a. Medical reports; and
> b. Other pertinent records, including but not limited to, information contained in or transmitted by any device located in or on the motor vehicle.

[ECF No. 17-1 at 35].

Following a traffic accident, Gittemeier issued a demand letter to Liberty Mutual which included medical records and bills, requesting payment of the $250,000.00 policy limit of her UIM coverage policy. [ECF No. 20 at 8]. On January 9, 2024, Liberty Mutual sent an email to Gittemeier's counsel, stating that it was willing to offer $8,500.00 to resolve the claim. [ECF No. 20-5 at 1]. After Gittemeier rejected that offer, Liberty Mutual's counsel sent an email to Gittemeier's counsel on February 28, 2024, requesting Gittemeier's examination under oath ("EUO"). [ECF No. 26-1 at 1].

On April 4, 2024, Liberty Mutual's counsel sent a letter to Gittemeier's counsel scheduling the EUO for April 25, 2024 in St. Charles, Missouri. This letter also requested production of certain documents related to the accident and Ms. Gittemeier's medical treatment. On April 19, 2024, Liberty Mutual's counsel sent an email to Gittemeier's counsel, expressing a desire to reschedule the EUO because it had "yet to receive any of the requested documents" or confirmation of availability on that date. [ECF No. 20-1 at 1]. Gittemeier's counsel responded with several dates that Gittemeier would be available for the EUO and requested that it be conducted via Zoom. Liberty Mutual then sent a notice rescheduling the EUO for May 20, 2024 in St. Charles, Missouri.

On May 20, 2024, Gittemeier's counsel, but not Gittemeier herself, appeared for the EUO and noted that the location of the EUO was burdensome for Gittemeier and that he had suggested alternatives such as a recorded statement or an EUO via Zoom.

On June 17, 2024, Liberty Mutual's counsel sent another rescheduling letter for the EUO, setting it for June 25, 2024 in St. Charles, Missouri, and requesting production of the same

2

previously-requested documents. In this letter, Liberty Mutual's counsel indicated openness to conducting the EUO "downtown" if Gittemeier so wished and that she was "open to suggestions regarding location." [ECF No. 17-4 at 1]. On June 21, 2024, Gittemeier's counsel asked to reschedule the EUO planned for June 25, 2024 due to his own surgery; Liberty Mutual's counsel agreed to rescheduling the EUO for a future date.

On July 8, 2024, Liberty Mutual's counsel emailed Gittemeier's counsel, asking about Gittemeier's availability for the EUO and suggesting conducting it at Gittemeier's counsel's office or close to Gittemeier's home. Gittemeier's counsel responded with openness to scheduling the EUO and stated that the original St. Charles location was "fine." [ECF No. 20-2 at 1]. Liberty Mutual's counsel then asked Gittemeier's counsel via email to confirm that August 7, 2024 worked for him and Gittemeier. On July 18, 2024, Liberty Mutual's counsel sent a notice scheduling the EUO for August 7, 2024 in St. Charles, Missouri.

On August 6, 2024, Gittemeier filed the present suit in the Circuit Court of St. Charles County, Missouri. On August 7, 2024, Gittemeier's counsel, but not Gittemeier herself, appeared for the EUO and stated that he had informed Liberty Mutual's counsel that suit had been filed the previous day and that he had advised Gittemeier that the EUO would not proceed.

Liberty Mutual removed this action to this Court. On March 24, 2025, Liberty Mutual filed a motion for summary judgment. [ECF No. 17]. On April 14, 2025, Gittemeier filed an amended memorandum in opposition to Liberty Mutual's motion and a cross-motion for partial summary judgment. [ECF No. 22]. On June 20, 2025, the Court denied both Liberty Mutual's motion for summary judgment and Gittemeier's cross-motion for partial summary judgment. [ECF No. 40].

On July 15, 2025, Liberty Mutual filed a second motion for summary judgment. [ECF No. 47]. On July 22, 2025, Liberty Mutual filed a notice of errata concerning two erroneous citations

3

in the memorandum supporting the second motion for summary judgment. [ECF No. 50]. On August 5, 2025, Gittemeier filed a memorandum in opposition to Liberty Mutual's second motion for summary judgment [ECF No. 52] and a motion for sanctions against Liberty Mutual [ECF No. 54]. On August 15, 2025, Liberty Mutual filed a reply to Gittemeier's memorandum in opposition which also addresses Gittemeier's motion for sanctions. [ECF No. 55].

**II.    Summary Judgment Standard**

"Summary judgment is proper where the evidence, when viewed in the light most favorable to the nonmoving party, indicates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Spears v. Missouri Dept. of Corrections and Human Resources*, 210 F.3d 850, 853 (8th Cir. 2000); Fed. R. Civ. P. 56(a). If there are factual disputes that may affect the outcome of the case under the applicable substantive law, summary judgment is not appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it relates to the legal elements of the claim. *Id.* A dispute of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.* "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Id.* at 252.

The nonmoving party may not rely on allegations or denials but must substantiate its allegations with sufficient probative evidence that would permit a finding in its favor on more than mere speculation or conjecture. *Ball v. City of Lincoln, Nebraska*, 870 F.3d 722, 727 (8th Cir. 2017). Even if some factual dispute exists, if the evidence, taken as a whole, is so one-sided that a fair-minded trier of fact could not find for the nonmoving party, then there is no genuine issue for trial, and the movant is entitled to summary judgment. *Id.*

### III. Discussion

**1. Second Motion for Summary Judgment**

In its second motion for summary judgment, Liberty Mutual attempts to supplement the evidentiary record to address the issues identified in the Court's previous order denying Liberty Mutual's initial motion for summary judgment. Liberty Mutual asserts that the renewed record confirms that Gittemeier's failures were not excusable, and that her duty to cooperate remained personal, non-delegable, and unexcused as a matter of law.

Liberty Mutual states that Missouri courts have consistently upheld cooperation clauses and EUO requirements as valid and enforceable conditions precedent to coverage, citing *Dhyne v. State Farm Fire & Cas. Co.*, 188 S.W.3d 454, 457 (Mo. banc 2006). Further, Liberty Mutual contends that failure to attend scheduled EUOs constitute a material breach precluding coverage under Missouri law, citing *State Farm Fire & Cas. Co. v. Rogers*, No. 6:19-CV-03336-SRB, 2020 WL 877815, at *4 (W.D. Mo. Feb. 21, 2020).

Additionally, Liberty Mutual argues that under Missouri law, reliance on the advice of counsel does not excuse an insured's personal, non-delegable duty to comply with a cooperation clause. Liberty Mutual concludes that Gittemeier's complete and repeated failure to appear for four scheduled EUOs and to provide any requested claim-related documents constitutes a material breach of the Policy's cooperation clause, precluding coverage as a matter of law.

In response, Gittemeier asserts that Liberty Mutual's second motion for summary judgment makes the same argument with a similar factual basis as the initial motion and must be denied because Liberty Mutual has failed to establish that Gittemeier materially breached the cooperation clause of the Policy. Gittemeier also contends that Liberty Mutual has failed to show that its request for an EUO was reasonable or that it suffered any prejudice from the lack of an

5

EUO, and moreover that a genuine question exists as to whether Liberty Mutual's conduct in proceeding with the EUO on August 7, 2024 despite knowing that suit had been filed served to waive its affirmative defense of non-cooperation.

According to Gittemeier, in the cases cited by Liberty Mutual where there was a material breach of a cooperation clause, the insured withheld documents and refused to submit to an EUO. Gittemeier distinguishes her own situation in that her counsel was clear throughout the pre-suit process that she was not refusing to cooperate or refusing to submit to an EUO. Rather, Gittemeier asserts that Liberty Mutual acted unreasonably by refusing every suggestion of obtaining the same information in less burdensome ways and insisting on the most burdensome methods. Gittemeier points out that Liberty Mutual does not explain why conducting the EUO via Zoom, conducting the EUO in conjunction with a scheduled arbitration, or taking a recorded statement – a method expressly identified by the cooperation clause as an acceptable means of investigating a claim – would have been unacceptable or in any way insufficient in this matter.

Further, Gittemeier argues that Liberty Mutual has failed to establish that Gittemeier breached any contractual duty regarding the production of documents. Gittemeier maintains that she gratuitously produced her medical and billing records for the injuries she sustained in the crash, and it would not be fair or reasonable to request the same documents that Liberty Mutual had already confirmed receiving.

In reply, Liberty Mutual reiterates that the cooperation clause does not grant the insured a unilateral right to substitute a recorded statement for an EUO when Liberty Mutual reasonably requires the latter. Liberty Mutual asserts that the Policy assigns the choice of investigative format to Liberty Mutual – subject to reasonableness – which it has satisfied. Liberty Mutual also argues that Gittemeier's contention that the parties were "trying to negotiate the terms of the

6

EUO itself" [ECF No. 52 at 4] is moot because she agreed to the August 7, 2024 EUO and never objected to the location.

In the previous order, the Court mentioned the lack of clarity whether Gittemeier's absences at the scheduled EUOs were due to her own decisions or her previous counsel's strategy. While the Court acknowledged this issue, it had no influence on the outcome. Rather, the decisive factor was and continues to be Liberty Mutual's failure to establish a material breach or that it exercised reasonable diligence to secure Gittemeier's cooperation. "To deny liability coverage under such a provision, an insurer must prove: (1) a material breach of the cooperation clause; (2) the existence of substantial prejudice as a result of the breach; and (3) the exercise of reasonable diligence to secure the insured's cooperation." *Med. Protective Co. v. Bubenik*, 594 F.3d 1047, 1051 (8th Cir. 2010) (citing *Wiles v. Capitol Indem. Corp.*, 215 F.Supp.2d 1029, 1031 (E.D. Mo. 2001)).

In its memorandum in support of its second motion for summary judgment, Liberty Mutual posits that in *Goodman v. Liberty Mut. Fire Ins. Co.*, 2022 WL 4534416, at *6–7 (E.D. Mo. Sept. 28, 2022), "the court rejected the insured's claim that misunderstandings or disagreements with her attorney absolved her from appearing." [ECF No. 48 at 11]. That particular case does not exist. Liberty Mutual submitted a notice of errata in which it apologized for the citation "error" [ECF No. 50 at 2] and indicated that the intended citation was *Goodman v. Allstate Fire & Cas. Ins. Co.*, No. 22-00383-CV-W-GAF, 2023 WL 5667909 (W.D. Mo. July 26, 2023). The intended *Goodman* case, however, does not involve the court rejecting the insured's claim that misunderstandings or disagreements with her attorney absolved her from appearing. *Goodman*, rather, merely reaffirms that an "insured's failure to assist an insurer with investigation of an insurance claim can result in denial of coverage." 2023 WL 5667909 at *4.

7

Moreover, in its memorandum in support of its second motion for summary judgment, Liberty Mutual stated that in *Chaudhri v. State Auto Prop. & Cas. Ins. Co.*, 2022 WL 4596697, at *7 (E.D. Mo. Sept. 30, 2022), "the court similarly rejected the insured's argument that strategic legal advice justified his failure to comply and granted summary judgment." [ECF No. 48 at 11]. Here again, however, the cited case does not exist. In the same notice of errata referenced above, Liberty Mutual indicated that the intended citation was *Chaudhri v. State Auto Prop. and Cas. Ins. Co.*, No. 4:17-CV-00703-DGK, 2019 WL 1519307 (W.D. Mo. Apr. 8, 2019). Yet, *Chaudhri* does not involve the court rejecting the insured's argument that strategic legal advice justified his failure to comply. Instead, *Chaudri* holds that in the circumstances of that case, the insured's failure to comply with the cooperation clause was "prejudicial as a matter of law." 2019 WL 1519307 at *3.

Liberty Mutual also cites *Dhyne* to support its assertion that "Missouri courts have consistently upheld cooperation clauses and EUO requirements as valid and enforceable conditions precedent to coverage." [ECF No. 48 at 8]. To the contrary, *Dhyne* affirmed a judgment in favor of an insured on her suit for damages and attorney's fees under a Missouri statute that allows an insured to recover when the insurer has refused to pay a loss without reasonable cause or excuse. 188 S.W.3d at 455. Liberty Mutual even purported to quote the insurance policy at the center of the *Dhyne* case, stating that this policy "required the insured to 'submit to examination under oath as often as we reasonably require and sign the same.'" [ECF No. 48 at 9]. However, this policy language does not appear in that case. *Dhyne* simply has nothing to do with cooperation clauses, EUO requirements, or conditions precedent to coverage.

Furthermore, Liberty Mutual cites 30 Mo. Prac., *Insurance Law & Practice* § 4:2 (2d ed.) (2025) to support its statement that "cooperation clauses and EUO requirements are and have

8

been valid conditions precedent and strictly enforced under Missouri law for many years." [ECF No. 48 at 8]. This section, however, only discusses conditions precedent and material breach in general and does not mention cooperation clauses or EUO requirements. Likewise, Liberty Mutual cites 30 Mo. Prac., *Insurance Law & Practice* §§ 4:8 and 4:9 to bolster its position that "Missouri law holds that an insured's material breach of a cooperation clause gives rise to a presumption of prejudice to the insurer." [ECF No. 48 at 12]. But again, these sections discuss prejudice to the insurer and when it can be presumed in general and do not reach the specific issue of a material breach of a cooperation clause giving rise to a presumption of prejudice to the insurer. Rather, 30 Mo. Prac., *Insurance Law & Practice* § 4:8 includes the following:

> An insurer might be sufficiently prejudiced by the deprivation of its right to defend an action or the right to intervene or the right to require an examination under oath. In this respect, the breach of a policy condition by an insured could totally defeat the purpose of the condition and deprive the insurer of a legal right.[1]

While *Rogers*, *Goodman*, *Chaudri*, and other cases demonstrate that failing to attend a required EUO or otherwise failing to cooperate under an insurance policy can constitute a material breach, there is a key difference here. In this case, Gittemeier's counsel requested alternative examination formats such as a recorded statement, which is specifically contemplated in the Policy's cooperation clause. The Policy includes language that the insured must submit as often as Liberty Mutual "reasonably require[s]" to interviews, recorded statements, or EUOs. [ECF No. 17-1 at 35]. Accordingly, the essential questions in this case are whether Liberty Mutual has established a material breach by Gittemeier and whether Liberty Mutual was reasonable in its attempts to secure Gittemeier's cooperation.

---

[1] Liberty Mutual cited the above passage, misquoting it as follows: "An insurer may be sufficiently prejudiced when deprived of its right to require an examination under oath, as this breach defeats the purpose of the condition and deprives the insurer of a legal right." [ECF No. 48 at 13]. Although it is a misquotation, it captures the essence of the actual passage.

The Court acknowledges that Gittemeier's counsel eventually expressly agreed to a date and time for the EUO, but that does not change the fact that Liberty Mutual has not adequately explained its rejection of alternative formats. Liberty Mutual states that an in-person EUO was necessary "to obtain sworn testimony to authenticate Plaintiff's injuries, clarify treatment chronology and claimed specials, and close gaps in authorizations/records." [ECF No. 55 at 6]. But even accepting that sworn testimony was necessary, that could have been accomplished with an EUO via Zoom, which Gittemeier's counsel requested. Liberty Mutual also asserts that it properly declined the requested alternative formats in accordance with the Policy's plain terms, citing the Renewed Statement of Material Facts ¶¶ 6–10 and Exhibits Q, R, and S. [ECF No. 49]. However, none of these statements or exhibits firmly establish grounds for Liberty Mutual's denial of alternative formats. No other evidence has come to light that would warrant a different result since the Court's initial denial of summary judgment.

Viewing the evidence in the light most favorable to Gittemeier as the nonmoving party, Liberty Mutual has again failed to establish a material breach of the cooperation clause by Gittemeier or that it exercised reasonable diligence to secure Gittemeier's cooperation. As the Court found in the previous order, reasonable persons could disagree whether Gittemeier materially breached the Policy. *Northrop Grumman Guidance & Elecs. Co. v. Emp'rs Ins. Co. of Wausau*, 612 S.W.3d 1, 27 (Mo. App. W.D. 2020) ("Missouri courts are clear that where reasonable persons could disagree whether the insured materially breached its insurance policy and the insurer suffered substantial prejudice as a result, the issues are questions of fact for the fact-finder to resolve."). The Court cannot reach the issue of substantial prejudice without failure to comply and breach being established. There still remain questions of fact for the fact-finder to resolve. The Court will thus deny Liberty Mutual's second motion for summary judgment.

### 2. Motion for Sanctions

Gittemeier's motion for sanctions asserts that Liberty Mutual's second motion for summary judgment fails to address this Court's explanation of its ruling in its previous order and tacitly acknowledges that this Court's reasoning is legally sound. According to Gittemeier, Liberty Mutual's second motion for summary judgment violates Federal Rule of Civil Procedure 11(b)(2) because it is not warranted by existing law.

Further, Gittemeier contends that Liberty Mutual omits factual contentions with evidentiary support that justify granting the motion. Gittemeier points to the Court's previous order which stated that "Liberty Mutual has provided no rationale for its decision to ignore the request for an alternative format." [ECF No. 40 at 6]. Gittemeier posits that Liberty Mutual did not provide any facts to address this issue and therefore violated Federal Rule of Civil Procedure 11(b)(3), as "Rule 11's main purpose is to deter baseless filings" and "Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and not interposed for any improper purpose." *Adams v. USAA Cas. Ins. Co.*, 863 F.3d 1069, 1077 (8th Cir. 2017) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (internal quotation marks and alterations omitted). Gittemeier argues that Liberty Mutual's second motion is a baseless filing because it did not modify its argument after the Court had already denied the initial motion, and that it is not well grounded in fact or legally tenable.

Finally, Gittemeier posits that Liberty Mutual again miscited cases in its filing and referenced at least one non-existent citation, despite the Court's warning in the previous order to verify its sources before submitting future filings. Gittemeier points out that the *Goodman* case was again miscited in Liberty Mutual's filing after it had been miscited in the initial summary

11

judgment memorandum. Moreover, Gittemeier asserts that the quoted section from 30 Mo. Prac., *Insurance Law & Practice* is not found in the cited section or in the nearby sections. Gittemeier asks the Court to order Liberty Mutual to explain why it should not be sanctioned, to sanction Liberty Mutual by striking its affirmative defenses, and to award attorneys' fees and costs.

Liberty Mutual replies that Gittemeier's motion for sanctions does not identify compliance with Rule 11(c)(2)'s safe-harbor procedure and instead seeks a show-cause order. Liberty Mutual maintains that this defect is independently dispositive, and that disagreement with its legal position does not approach Rule 11 where the renewed motion was tailored to the Court's previous order and supported by policy text, facts, and additional record.

The Court is not persuaded by Liberty Mutual's second motion for summary judgment, but it is not baseless or frivolous. Liberty Mutual attempted to reinforce its initial argument with additional caselaw and a renewed record. Though the Court will deny Liberty Mutual's motion, it is not completely lacking in evidentiary support. Therefore, the underlying argument and evidence in support of Liberty Mutual's motion does not violate Federal Rule of Civil Procedure 11(b).

On the other hand, Liberty Mutual's erroneous citations constitute a serious oversight warranting consideration of sanctions pursuant to Rule 11. After Liberty Mutual cited two nonexistent cases in its initial motion for summary judgment, the Court urged "Liberty Mutual to verify its sources before submitting future filings with the Court" and indicated that this warning would be provided only once. [ECF No. 40 at 6 n.1]. Yet somehow, in its memorandum in support of its second motion for summary judgment [ECF No. 48], Liberty Mutual not only cited

12

two nonexistent cases again[2] (*Goodman* was miscited previously as well), but also misquoted or mischaracterized multiple cases, including *Dhyne*, *Goodman*, and *Chaudri*. *See supra* pp. 7-8. Furthermore, Liberty Mutual falsely suggested that 30 Mo. Prac., *Insurance Law & Practice* §§ 4:2, 4:8, and 4:9 contains comments regarding cooperation clauses and EUO requirements. *See supra* pp. 8-9.

One week after filing its second motion for summary judgment, Liberty Mutual submitted a notice of errata identifying the erroneous *Goodman* and *Chaudri* citations and demonstrating legitimate citations to those cases. [ECF No. 50].[3] While the Court acknowledges Liberty Mutual's prompt notice disclosing the two most serious errors in its filing, the additional misquotations and mischaracterizations discussed above will not be disregarded. Liberty Mutual indicates that the errors were typographical and/or caused by vision impairment, but that explanation is simply not credible. The errors in Liberty Mutual's filing are not ones in which a few letters or numbers were passed over or shuffled. Rather, the filing includes entire names, dates, court designations, and Westlaw citations that are completely off base, and various other inaccuracies cannot be explained by typographical or vision issues. Therefore, the Court will reserve its ruling on the motion for sanctions and will set a hearing requiring Liberty Mutual to show cause why it should not be sanctioned. The hearing will be scheduled for Wednesday, October 22, 2025, at 11:00 A.M. in Courtroom 12N. Counsel for each party will be directed to attend the hearing.

---

[2] As discussed above, Liberty Mutual cited *Goodman v. Liberty Mut. Fire Ins. Co.*, 2022 WL 4534416, at *6-7 (E.D. Mo. Sept. 28, 2022) and *Chaudhri v State Auto Prop. & Cas. Ins. Co.*, 2022 WL 4596697 (E.D. Mo. Sept 30, 2022). [ECF No. 48 at 11, 14]. These cases do not exist.
[3] In the notice of errata, Liberty Mutual asserts that it intended to cite *Goodman v. Allstate Fire & Casualty Insurance Co.*, 2023 WL 5667909 (W.D. Mo. July 26, 2023) and *Chaudhri v. State Auto,* 2019 WL 1519307 (W.D. Mo. April 8, 2019). [ECF No. 50 at 1-2].

## IV. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Liberty Mutual Personal Insurance Company's second motion for summary judgment [ECF No. 47] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court reserves its ruling on Plaintiff Jamie Gittemeier's motion for sanctions against Liberty Mutual [ECF No. 54] and a hearing requiring Liberty Mutual to show cause why it should not be sanctioned is scheduled for **Wednesday, October 22, 2025, at 11:00 A.M. in Courtroom 12N**. Counsel for each party are directed to attend the hearing.

Dated this 16th day of October, 2025.

*/s/ John A. Ross*
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE