**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMIE GITTEMEIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:24-CV-1236-JAR |
| | ) | |
| LIBERTY MUTUAL PERSONAL | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Jamie Gittemeier's motion for sanctions against Defendant Liberty Mutual Personal Insurance Company in this insurance coverage dispute. Gittemeier filed this motion after Liberty's counsel submitted court filings containing multiple erroneous citations. The Court will grant the motion in part and order an award of Plaintiff's attorney fees necessitated by the errors and a sanction of $1,000 payable into the Court registry.

### Background

The underlying facts are set forth in the Court's orders denying summary judgment. (Doc. 40, 57). In sum, Gittemeier was injured in a traffic accident with an underinsured motorist and filed a claim with her own carrier, Liberty, for the policy limit. The policy requires insureds to cooperate with Liberty in its investigation of claims, including by submitting to an examination under oath. After a lengthy back-and-forth between counsel about the date and format of the examination, Gittemeier filed this lawsuit for breach of contract and vexatious refusal.

In March 2025, before the close of discovery, Liberty filed a motion for summary

1

judgment asserting that Gittemeier's failure to cooperate with the investigation constituted a material breach of the policy that precluded coverage. (Doc. 17, 19). In her response to the motion (Doc. 22), Gittemeier noted that Liberty's brief contained two citation errors. In both, the reporter numbers led to unrelated out-of-state cases with different names, though one case was also attached as an exhibit reflecting the correct citation.[1]  (Doc. 17-11). In June 2025, the Court denied Liberty's motion, reasoning that the evidence gave rise to jury questions whether Gittemeier truly refused to cooperate and whether Liberty exercised reasonable diligence to accommodate her. (Doc. 40); *Gittemeier v. Liberty Mut. Pers. Ins. Co.*, 2025 WL 1726456 (E.D. Mo. June 20, 2025). In a footnote, the Court referenced the erroneous citations and admonished Liberty to verify its sources before submitting future filings. *Id*. at *3. The Court cautioned that it would issue only one warning, for "[a]n attempt to persuade a court or oppose an adversary by relying on fake opinions is an abuse of the adversary system." *Id*. (citing *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023)). In response to the Court's admonishment, counsel for Liberty, Ellen Brooke, filed a Notice of Errata. (Doc. 41). With apologies to the Court, she explained that chronic medical issues affecting her vision,[2] combined with her haste to meet the briefing deadline, caused the oversights. Attached to the Notice were copies of actual cases cited in her brief.

Then in July 2025, Liberty filed a second motion for summary judgment with an expanded evidentiary record purporting to resolve fact issues identified in the Court's first order.

---

[1]    The other case was completely fictitious. It bears mention that the incorrect citation was in Southwestern Reporter format for published Missouri appellate decisions while the correct citation was in Westlaw unpublished format for federal district court decisions. One format can hardly be mistaken for the other.

[2]    Brooke disclosed her conditions during a status conference in May and elaborated at the hearing on the present motion in October. The Court accepts Brooke's representation that her condition causes serious vision impairments. While the Court is sympathetic to Brooke's difficulties, it seems obvious that they render independent review and cite checking all the more imperative.

(Doc. 48). A week later, after an unsuccessful mediation, Brooke filed a second Notice of Errata identifying two incorrect citations where the Westlaw numbers didn't correspond to the intended case names.  (Doc. 50). She offered apologies to the Court and opposing counsel and attached copies of the actual cases.

Gittemeier later filed the instant motion for sanctions asking the Court to strike Liberty's affirmative defenses and award attorney fees and costs. (Doc. 54). In its second order denying summary judgment, the Court observed that Liberty not only miscited two cases *again* but also misquoted an excerpt of the Missouri Practice Series by paraphrasing text yet formatting it as a direct quote. Further, in the Court's view, Liberty mischaracterized the holdings in three cases and the principles stated in three sections of the Missouri Practice Series. The Court expressed incredulity at counsel's explanation that the inaccuracies were typographical or the result of vision impairments, particularly insofar as the erroneous citations were not minor typos but were entirely wrong. (Doc. 57). *See Gittemeier v. Liberty Mut. Pers. Ins. Co.*, 2025 WL 2939128, at *6-7 (E.D. Mo. Oct. 16, 2025).

The Court held a hearing on Gittemeier's motion for sanctions on October 22, 2025. Defendant Liberty appeared though Brooke along with Katherine Smith and Debbie Champion, all partners of the law firm Rynearson, Suess, Schnurbusch & Champion. Brooke authored the briefs in question. Smith is also entered in the case, and her name appears in the signature block of the filings. Champion is the firm's relationship partner for Liberty. Plaintiff Gittemeier appeared through counsel, Thomas Gatheman.

After summarizing the relevant procedural history, the Court invited Brooke to explain how these errors and misstatements occurred. For context but not as an excuse, Brooke described the symptoms she was experiencing from her autoimmune condition at the time of the filings.

3

She believed she was still functioning at a competent level, but clearly that was not the case. Brooke's legal specialization entails significant motion practice on recurring issues such that sections of briefs are routinely repurposed and adapted from one matter to another. This is not uncommon. Brooks explained that she keeps multiple drafts and uses automated key functions to insert frequently cited cases. She typically conducts a final check before submission but acknowledged that she evidently failed to do so with the first summary judgment motion here. Still, the Court fails to understand how brief templates and key functions could generate completely inaccurate citations. As for the second motion, Brooke stated that somehow an early rough draft was filed and not the intended final draft, which Smith reviewed. Given the passive voice used to describe this mistake, the Court infers that the motion may have been filed by someone else. Nonetheless, it was filed on Brooke's behalf with her signature.

Brooke assured the Court that these errors were human and not a product of artificial intelligence (AI). In support of this assurance, she offered the Court a copy of her Westlaw search history for the relevant period. She explained, as the Court understands it, that one incorrect citation to the Missouri Practice Series was intended to refer to a footnote in that section, though upon review the Court still questions its relevance. Brooke was prepared to defend her interpretation of the actual caselaw and, without venturing into the weeds, it was clear that Brooke was familiar with the applicable precedent and believed it could be construed to support her client's position.

Ms. Champion informed the Court that, in its internal investigation of these events, the firm conducted two separate technical audits, which concluded that the citation errors were human and not AI-generated. She provided the records of those audits to the Court. Champion described Brooke and Smith as reliable members of the firm for over a decade. She

acknowledged the gravity of the circumstances and offered to enter her appearance in the case. Mr. Gatheman argued that Brooke's explanations were not credible, and the more logical explanation was that she used AI.

**Legal Standards**

By presenting a written motion to the Court, an attorney certifies that, to the best of her knowledge, information, and belief, formed after reasonable inquiry, the motion is not being presented for any improper purpose, and the claims, defenses, and other legal contentions are warranted by existing caselaw. Fed. R. Civ. P. 11(b). Rule 11 imposes an objective standard of reasonable inquiry that doesn't mandate a finding of bad faith. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991). Every filing that contains citations to phony caselaw amounts to a violation of Rule 11(b). *Turnage v. Associated Bank, N.A*., 2025 WL 3052638, at *3 (D. Minn. Sept. 12, 2025). "A fake opinion is not 'existing law' and … an attempt to persuade a court or oppose an adversary by relying on fake opinions is an abuse of the adversary system." *Nguyen v. Savage Enterprises*, 2025 WL 679024, at *1 (E.D. Ark. Mar. 3, 2025) (citing *Mata*, 678 F. Supp. 3d at 461).

**Discussion**

Based on the evidence and credible representations offered at the hearing, the Court believes that the citation and quotation defects in Liberty's briefs were the result of egregious human error and not AI. Nevertheless, such carelessness, exacerbated by a lack of internal guardrails, is entirely unacceptable. This grievous inattention imperils the client's interests and wastes the time and resources of opposing counsel and the Court. It is paramount that the Court be able to rely on the diligence, candor, and competence of counsel. Reckless errors and

misstatements weaken the Court's trust and faith in the lawyers before it and erode public confidence in the legal profession and the judicial system.

A sanction imposed under Rule 11 must be limited to what suffices to deter repetition of the conduct or comparable conduct by others. Fed. R. Civ. P. 11(c)(4). Sanctions may include non-monetary directives, a penalty payable to the Court, and an award of attorney fees resulting from the violation. *Id.* The Court finds that Gittemeier is entitled to an award of attorney fees and costs attributable to the erroneous citations and the instant motion for sanctions. Additionally, Brooke, as the sole author of the briefs in question, will be ordered to pay a penalty of $1,000 into the Court registry for wasting judicial resources. Brooke has already withdrawn her appearance in this case.

The extent of Smith's involvement in these events is unclear, but she is co-counsel whose name appears on the pleadings, and she at least reviewed the intended final draft of the second motion. Out of caution, the Court finds it appropriate that Smith's representation in this case should cease, but she will be permitted to file a motion to withdraw. Champion and another partner of the firm, Dean Stark, have entered their appearances on behalf of Liberty.

However, to the extent Gittemeier asks the Court to strike Liberty's affirmative defenses as an additional sanction, her motion will be denied. The Court has already denied Liberty's second motion for summary judgment. Should this matter proceed to trial, the Court is unwilling to deprive Liberty of applicable defenses as a sanction for counsel's failures.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for sanctions is **GRANTED in part**. (Doc. 54). Plaintiff shall submit documentation in support of an award of attorney fees and costs associated with Defendant's citation errors by **November 26, 2025**.

**IT IS FURTHER ORDERED** that Defendant's counsel Ellen Brooke is ordered to pay a sanction in the amount of **$1,000**, payable to the Clerk of the Court.

**IT IS FURTHER ORDERED** that Defendant's counsel Katherine Smith is directed to file a motion to withdraw upon receipt of this Order.

**IT IS FINALLY ORDERED** that, to the extent Plaintiff asks the Court to strike Defendant's affirmative defenses, the motion is denied.

Dated this 17th day of November, 2025.

_John A. Ross_
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE